UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-23028-CIV-SCOLA/OTAZO-REYES

JULIO ANTONIO SILVA and
all others similarly situated
under 29 U.S.C. 216(b),

      Plaintiff,

v.

PRO TRANSPORT, INC.,
OSCAR ACHARANDIO, and
TONY MENENDEZ,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendants Pro Transport, Inc. ("Pro Transport"), Oscar Acharandio ("Acharandio"), and Tony Menendez's ("Menendez") (collectively, "Defendants") Motion for Sanctions pursuant to the Court's inherent powers and 28 U.S.C. § 1927 (hereafter, "Section 1927 Motion for Sanctions") [D.E. 40]; and Defendants' Motion for Rule 11 Sanctions Against Plaintiff (hereafter, "Rule 11 Motion for Sanctions") [D.E. 41] (collectively, "Sanctions Motions"). These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Robert N. Scola, Jr., United States District Judge [D.E. 42 & 47]. The undersigned held an evidentiary hearing on these matters on May 24, 2016 [D.E. 53]. For the reasons stated below, the undersigned respectfully recommends that the Section 1927 Motion for Sanctions and the Rule 11 Motion for Sanctions be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Julio Antonio Silva ("Plaintiff" or "Silva") commenced this action on August

12, 2015 pursuant to the Fair Labor Standards Act ("FLSA") seeking to recover overtime wages from Defendants. See Compl. [D.E. 1]. Plaintiff alleged that he "worked an average of 70 hours a week for Defendants, including, but not limited to, attending to and rescue work for stranded vehicles during the night hours." Id. ¶ 15. In his Statement of Claim, Plaintiff stated that he was owed $109,395 in unpaid overtime wages for the period of time from November 13, 2012 through August 12, 2015. See Statement of Claim [D.E. 7 at 1]. Plaintiff sought to recover liquidated damages in an equal amount for a total of $218,790, plus attorney's fees and costs. Id. In an Amended Statement of Claim, Plaintiff reduced his demand for unpaid overtime wages to $49,725 and adjusted the claim period to August 12, 2012 through November 13, 2013. See Amended Statement of Claim [D.E. 11 at 1]. He again demanded liquidated damages in an equal amount for a total award of $99,450, plus attorney's fees and costs. Id.

On November 17, 2015, Defendants filed a Motion for Summary Judgment and for Sanctions [D.E. 21].[1] During the pendency of the motion, Defendants filed a Motion to Stay Action/Abate Discovery Pending Resolution of Threshold Issue of Judicial Estoppel (hereafter, "Motion to Abate") [D.E. 23]. In its Order Granting Motion for Summary Judgment dated January 12, 2016 (hereafter, "Summary Judgment Order"), the Court summarized the issues presented as follows:

> Defendants argue that Silva is judicially estopped from seeking unpaid wages, because Silva failed to report this action as a contingent or potential asset in an ongoing bankruptcy proceeding. (Mot. 3, ECF No. 21.) Therefore, Defendants assert that they are entitled to summary judgment. (Id.) The parties agree that Silva "failed to enter his wage and hour claim against his former employer on the bankruptcy schedule . . . ." (Resp. 2, ECF No. 28.) In fact, Silva admits that he "absolutely should have disclosed a potential claim when he filed for Chapter 12 bankruptcy as a potential asset." (Id. 3.) Yet, Silva argues that his failure to disclose his potential claim was unintentional making summary judgment inappropriate. (Resp. 5, ECF No. 28.).

---

[1] Defendants sought to recover the attorneys' fees and costs incurred in defending the case as a sanction against Plaintiff pursuant to the Court's inherent powers. Id. at 12.

<u>See</u> Summary Judgment Order [D.E. 38 at 1, docketed 1/13/2016]. The Court then conducted the following legal analysis:

> Judicial estoppel applies where (1) a party asserts inconsistent positions and (2) the inconsistency would allow a party to benefit from deliberate manipulation and mockery of the courts. *See, e.g., Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010). The parties agree that Silva asserts inconsistent positions, because Silva failed to list the instant claim on his bankruptcy schedules. (Mot. 5–6, ECF No. 21; Resp. 3, ECF No. 28.) Silva also agrees that "[t]he disclosure of the property of a bankruptcy estate is the debtor's ongoing duty" (Resp. 3, ECF No. 28), and he does not dispute that this "property" includes potential claims existing prior to the close of the bankruptcy case. *See* 11 U.S.C. § 1306(a).

> Instead, Silva disputes whether his "manipulation" or nondisclosure was deliberate. (Resp. 6, ECF No. 28.) To determine whether a party's nondisclosure was a "deliberate manipulation," the law requires "intentional contradictions, not simple error or inadvertence." *Robinson*, 595 F.3d at 1275 (citation omitted). A debtor's failure to satisfy his or her statutory duty to disclose is "inadvertent" only when the debtor either lacks knowledge of the undisclosed claim or has no motive for its concealment. *Id.* (citation omitted). The parties agree that such intent may be inferred from the record. (Mot. 8, ECF No. 21; Resp. 5, ECF No. 28.) Moreover, Silva agrees that he knew about the claim at the time of the bankruptcy filing and does not offer evidence refuting Defendants' claim that he had a motive to conceal the claim. Rather, Silva argues that the Court should not infer that his nondisclosure was deliberate, because he "moved to amend the schedule[] and only a small amount of time . . . passed under the Chapter 13 plan . . . ." (Resp. 6, ECF No. 28.)

> The Court finds Silva's attempt to remedy the nondisclosure insufficient, if not irrelevant and immaterial. First, Silva asked to amend his bankruptcy schedules only after Defendants challenged Silva's omissions in their motion for summary judgment and months after Silva's bankruptcy plan was approved based on his misrepresentations to the bankruptcy court (Order Confirming Plan, ECF No. 21-4). This is insufficient. *See De Leon v. Comcar Indus.*, 321 F.3d 1289, 1292 (11th Cir. 2003) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1283 (11th Cir. 2002) ("Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them.") Second, the Eleventh Circuit has "repeatedly . . . recognized that when a debtor fails to disclose a pending lawsuit to the bankruptcy court, while having knowledge of the lawsuit and a motive to conceal it, the doctrine of judicial estoppel bars the undisclosed action from proceeding." *Dunn v. Advanced Med. Specialties, Inc.*, 556 F. App'x 785, 788 (11th Cir. 2014). Therefore, Silva's attempt to amend his bankruptcy schedules is immaterial and does not shield him from judicial estoppel.

Id. at 1-2.[2]  Accordingly, the Court granted Defendants' Motion for Summary Judgment and directed Defendants to file a separate motion if they still wished to seek sanctions against Silva. Id. at 3.

On January 27, 2016, Defendants filed the Sanctions Motions.  As noted above, the Section 1927 Motion for Sanctions is predicated on the Court's inherent powers and 28 U.S.C. § 1927.  See Section 1927 Motion for Sanctions [D.E. 40 at 6].  Defendants ask that the Court assess as sanctions the fees and costs incurred in defending against this action.  Id.  In the Rule 11 Motion for Sanctions, which is predicated on Fed. R. Civ. P. 11 (hereafter, "Rule 11"), Defendants ask the Court to dismiss Plaintiff's Complaint with prejudice and to award them the reasonable fees incurred in defending against the action.  See Rule 11 Motion for Sanctions [D.E. 41 at 8].  Defendants informed the Court that the Rule 11 Motion for Sanctions was being presented as served upon Plaintiff after complying with the 21-day safe harbor provision of Rule 11 but noted that, in the interim, the Court had granted their Motion for Summary Judgment.  See Rule 11 Motion for Sanctions [D.E. 41 at 1 n.1].  Although the request for dismissal of the Complaint has been rendered moot by the Summary Judgment Order, the Court referred the Rule 11 Motion for Sanctions to the undersigned "in the interest of completeness, and because Defendants seek attorneys' fees."  See Order of Reference [D.E. 47].

## STANDARD OF REVIEW

### A.   *Court's inherent powers*

"[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel."  Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991) (citing

---

[2]  The Court also rejected Silva's contention that Defendants' failure to raise the defense of judicial estoppel in their earlier responsive pleading waived their right to assert it as the basis for their summary judgment motion. Id. at 2.

Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980)).  A court may do so "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 45-46 (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)).  "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." Id. at 46 (citing Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575, 580 (1946); Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)).  "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." Id. (citing Hutto, 437 U.S. at 689 n.14).

"The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995)); see also In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) (The imposition of sanctions pursuant to the Court's inherent powers requires a finding of bad faith.). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." Barnes, 158 F.3d at 1214 (citing Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)).

**_B._**      **_Section 1927_**

Title 28, United States Code, Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "[T]he statute sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings." Macort v. Prem, Inc., 208 F. App'x 781, 785-86 (11th Cir. 2006) (citing Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)). "All three requirements must be met before sanctions are imposed." Id. at 786.

"[A]n attorney multiplies proceedings unreasonably and vexatiously within the meaning of the statute only when the attorney's conduct is so egregious that it is tantamount to bad faith." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007). "But it is clear from the statutory language and the case law that for purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on the attorney's objective conduct." Id. As further explained by the Eleventh Circuit:

[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions—the attorney must *knowingly* or *recklessly* pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim. If the attorney's misconduct meets this high standard, the district court may order the attorney to pay the "costs, expenses, and attorneys' fees reasonably incurred" because of the attorney's misconduct—that is, the excess costs that the attorney's multiplication of proceedings has added to the cost of the litigation.

Id. at 1242.

Thus, a finding of bad faith is required under both the Court's inherent powers and Section 1927. However, under Section 1927, "[t]he court can shift fees only to counsel, not to parties." Procter & Gamble Co. v. Amway Corp., 280 F.3d 519, 525 (5th Cir. 2002).

## C.   *Rule 11*

Rule 11 provides, in pertinent part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the

prevailing party the reasonable expenses, including attorney's fees, incurred for
the motion.

Fed. R. Civ. P. 11. "The objective standard for testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).

"Under Rule 11 sanctions may be imposed upon a represented party when the party had actual knowledge that the filing of the papers constituted wrongful conduct, *e.g.* the papers made false statements or w[ere] filed for an improper purpose." Brown v. Artus, 647 F. Supp. 2d 190, 205 (N.D.N.Y. 2009) (citing Calloway v. Marvel Entm't Grp., 854 F.2d 1452, 1474 (2d Cir. 1988)).

## **FINDINGS OF FACT**

1.      Plaintiff was the only witness at the May 24th Evidentiary Hearing.  However, as stated in the Order on Plaintiff's Motion to Supplement the Record of the Evidentiary Hearing Through Further Testimony, the undersigned is also considering as part of the evidentiary record the Affidavit of J.H. Zidell, Esq. ("Attorney Zidell") (hereafter, "Zidell Affidavit") [D.E. 59-1]. In addition, Defendants' Exhibits 1-27 were admitted into evidence [D.E. 54].

### *A.*     *Silva*[3]

2.      Silva first consulted with Zandro Palma, Esq. ("Attorney Palma") regarding a potential claim for unpaid overtime wages against Defendants.

3.      On April 23, 2014, Attorney Palma sent a demand letter to Pro Transport and Acharandio, claiming that Silva had worked for Pro Transport from April 4, 2005 until November 13, 2013 and had not been properly compensated for overtime hours worked [D.E.

---

[3]   Because Silva's testimony was vague, evasive, confused and inconsistent with regard to events and dates, the undersigned relies in part on documents in the record to supplement Silva's testimony and, in those instances, references the particular documents.

21-3].

4.      Sometime in 2014, Silva met with Mary Reyes, Esq. ("Attorney Reyes"), a bankruptcy attorney with whom he had come in contact through her television advertising.

5.      Silva claimed that he approached Attorney Reyes because he wanted to obtain a loan modification on his house mortgage to avoid losing the house.

6.       On October 29, 2014, Attorney Reyes commenced Chapter 13 Voluntary Bankruptcy Proceeding on behalf of Silva.  See Voluntary Petition, Defs.' Ex. 13.[4]

7.      Silva claimed that, to his understanding, the purpose of the bankruptcy court proceedings was to lower his mortgage payments.

8.      Silva was not successful in obtaining a loan modification and ended up turning over his home, where he lived with his mother, to the mortgagor.[5]

9.      Silva did not disclose his overtime claim against Defendants, which he had pursued through Attorney Palma since April 23, 2014, in the bankruptcy schedules because, in his words, "how stupid I am" and because he did not "know anything about law."[6]

10.     On April 15, 2015, the Bankruptcy Court entered an Order Confirming Chapter 13 Plan.  See Defs.' Ex. 15.

11.     In August 2015, Silva met with Attorney Zidell after Silva's mother saw an advertisement for Zidell's services on television.

---

[4]  See also Bankruptcy Court docket for Silva's Chapter 13 Voluntary Bankruptcy Proceedings under Petition # 14-33923-LMI, Defs.' Ex. 12.

[5]  See Final Report of Loss Mitigation Mediator by the Court Appointed Mortgage Modification Mediation Mediator, dated August 27, 2015, Defs.' Ex. 16 (indicating that the parties did not reach an agreement).  See also Debtor's Verified Ex Parte Motion for Referral to Mortgage Modification Mediation, Defs.' Ex. 25 (signed by Silva and filed by Attorney Reyes on September 3, 2015).

[6]  As noted above, Silva's failure to disclose this claim is undisputed.  See Summary Judgment Order [D.E. 38 at 1]; see also Bankruptcy Schedules, Defs.' Ex. 14 at 5 & 6 (showing "None" next to "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims" and "food stamps" valued at $180.00 next to "Other personal property of any kind not already listed").

12.     Silva told Attorney Zidell that Attorney Palma had done nothing for him in one year and had returned his papers to him, which he brought to Attorney Zidell.

13.     Silva signed an affidavit in opposition to Defendants' Motion for Summary Judgment in which he averred that Attorney Palma had eventually told him that he did not want to take the case because Silva did not have a claim. See Affidavit of Julio Antonio Silva, Defs.' Ex. 7. At the May 24th hearing, however, when asked point blank if Attorney Palma had ever told him that he had no overtime case, he answered no.

14.     At the time he first met with Attorney Zidell, Silva was not asked to identify any other litigation.

15.     Attorney Zidell commenced this action on behalf of Silva on August 12, 2015. See Compl. [D.E. 1]; Defs.' Ex. 11.

16.     After his initial meeting with Attorney Zidell, Silva visited him one more time to ask what had happened with his case.

17.     Silva never saw the Statement of Claim, Defs.' Ex. 18, or Amended Statement of Claim, Defs.' Ex. 19, and no one at Attorney Zidell's office ever told Silva what the value of his overtime wages claim was.

18.     In November 2015, Silva let Attorney Reyes know that Attorney Zidell required copies of the bankruptcy papers.

19.     A bankruptcy form filed in Silva's case on December 18, 2015, discloses a "Pending Lawsuit for unpaid wages amount unknown." See Defs.' Ex. 17 at 7.

20.     Silva denied having met with Attorney Vanessa Arencibia ("Attorney Arencibia") even though the Final Report of Loss Mitigation Mediator, Defs.' Ex. 16, shows that Attorney Arencibia represented Silva at the mediation.

21.     Silva also denied having met with Attorney Reyes in early September 2015 even though the Debtor's Ex Parte Motion for Referral to Mortgage Modification Mediation, Defs.' Ex. 25, that was filed by Attorney Reyes in the bankruptcy court on September 3, 2015, shows Silva's signature.

22.     The undersigned found Silva to be a person of low intellectual capacity, whose testimony was vague, confused and inconsistent.

### B.     *Attorney Zidell (based on the Zidell Affidavit [D.E. 59-1])*

23.     Attorney Zidell is the owner/sole shareholder in J.H. Zidell P.A. (hereafter, "Zidell Firm").

24.     Attorney Zidell is the supervisory attorney and an attorney of record on behalf of Silva in this action.

25.     Attorney Zidell personally conducted the intake interview with Silva, during which Silva did not disclose any other proceedings or legal cases, even though the Zidell Firm's intake form asks for any and all other pending legal matters.

26.     Upon the Zidell Firm's learning about Silva's bankruptcy proceedings, one of the Zidell Firm's associates contacted Attorney Reyes, who agreed to amend Silva's bankruptcy schedules to reflect this case.

27.     At a later time, the Zidell Firm, through associate counsel, verified that Silva's bankruptcy schedules had been amended.

28.     Attorney Zidell met with Silva to discuss his non-disclosure of the bankruptcy proceedings to the Zidell Firm and to inform him of the possible adverse effects of the non-disclosure on his case.

29.     Based on legal research and his personal knowledge, Attorney Zidell decided that judicial estoppel is a discretionary remedy.

30.     Attorney Zidell claims to have acted in good faith, without bad faith or vexatious purpose and in accordance with the ethical standards of the profession; and offers the following reasons for his conduct:

- He acted upon the representations of his client and believed him, citing case law that purportedly supports his entitlement to do so.

- The Zidell Firm relied on Attorney Reyes' knowledge of bankruptcy law that Silva's bankruptcy schedules could be amended.[7]

- During his meeting with Silva to discuss Silva's non-disclosure of the bankruptcy proceedings, he learned that Silva's failure to disclose was unintentional and due to a lack of understanding of the bankruptcy proceedings.

- Based on his determination that judicial estoppel is a discretionary remedy and that Silva's non-disclosure was not intentional, he acted in the best interests of his client under the circumstances by continuing to pursue the case.  In his opinion, Silva has a viable FLSA claim and deserves the benefit of the doubt in relation to the bankruptcy issue.[8]

- Given his assessment that judicial estoppel is a discretionary remedy, Plaintiff opposed the Motion to Abate to make sure that all discovery was completed in accordance with the schedule in the case.

- He did not believe that the filing of the Motion for Summary Judgment by Defendants excused the Zidell Firm from diligently prosecuting the case on behalf of Silva.

---

[7]  As found by the Court, amendment of the bankruptcy schedules was "irrelevant and immaterial" to the judicial estoppel analysis.  See Summary Judgment Order [D.E. 38 at 2].  Given Plaintiff's counsel's lack of corrective action in this case, the undersigned finds the Zidell Firm's reliance on Attorney Reyes' opinion that Silva's bankruptcy schedules could be amended to be equally irrelevant and immaterial with respect to the Sanctions Motions.

[8]  This sentiment is also reflected in the following passage from Plaintiff's opposition to the Sanctions Motions:  "The fact that the Defendants got lucky because the Plaintiff failed to disclose, to two sets of counsel, pertinent information, has absolutely no bearing on whether there was a violation of The FLSA."  See Plaintiff's Response [D.E. 49 at 4].  The undersigned finds the characterization of the outcome of the case as "lucky" for the Defendants to be offensive, given the burden imposed on Defendants, not to mention the Court, by the filing of this frivolous action.  And Attorney Zidell's expression of this opinion in his affidavit, notwithstanding the Court's contrary findings in the Summary Judgment Order, reinforces the undersigned's conclusions that sanctions are appropriate in this case.

### C.     *Case documents*

31.     As previously noted, Defendants filed their Motion for Summary Judgment and for Sanctions on November 17, 2015, which the Court granted on January 12, 2016.  See Defs.' Exs. 5 & 9.

32.     Plaintiff filed a response to the Motion for Summary Judgment and for Sanctions on December 12, 2015 and an affidavit from Silva on December 15, 2015.  See Defs.' Exs. 6 & 7.

33.     Defendants filed their Reply in support of the Motion for Summary Judgment and for Sanctions on December 24, 2015.  See Defs.' Ex. 8.

34.     Defendants filed the Motion to Abate on November 19, 2015.  See Defs.' Ex. 26. At the time, there was outstanding written discovery and Defendants' depositions were set for December 2015.  Id. at 2.

35.     Plaintiff opposed the Motion to Abate, on the grounds that "abatement would only delay adjudication, force the parties to reschedule their depositions and bump the court's deadlines further."  See Defs.' Ex. 27 at 2-3.[9]

## CONCLUSIONS OF LAW

### A.     *Section 1927 Motion for Sanctions*

Defendants seek sanctions against Plaintiff's counsel pursuant to Section 1927 and against both Plaintiff and his counsel pursuant to the Court's inherent powers.

With regard to sanctions against Plaintiff's counsel pursuant to Section 1927, the undersigned rejects Attorney Zidell's contention that he was entitled to rely on his client's non-disclosure of the bankruptcy proceedings at the initial interview, given that he did not ask Silva

---

[9]   Defendants have also placed on the evidentiary record the briefs on the Sanctions Motions, several documents related to Plaintiff's motions for extensions of time, and the Court's Order of Reference for the Rule 11 Motion for Sanctions.  See Defs.' Exs. 1-4, 20-24, & 10.

to identify any other litigation.  Moreover, Attorney Zidell's claim that the Zidell Firm's intake form asks for any and all other pending legal matters is a poor excuse for his failure to ask such an elementary question of his client or to conduct the rudimentary research that would have disclosed the existence of Silva's bankruptcy proceedings.[10]  Finally, the case law in the Eleventh Circuit is clear that "when a debtor fails to disclose a pending lawsuit to the bankruptcy court, while having knowledge of the lawsuit and a motive to conceal it, the doctrine of judicial estoppel bars the undisclosed action from proceeding." See Summary Judgment Order [D.E. 38 at 2] (quoting Dunn, 556 F. App'x at 788).  Therefore, the undersigned concludes that, applying the objective conduct standard of Section 1927, Attorney Zidell's filing of this action satisfies the Section 1927 prongs of unreasonable and vexatious conduct such that proceedings are multiplied.  See Macort, 208 F. App'x at 785-86.  Given that Plaintiff's counsel's conduct occurred at the inception of the case, sanctions in the entire amount of reasonable fees and costs incurred by Defendants in this case bears a financial nexus to the excess proceedings.  Id.  Because the analysis is the same pursuant to the Court's inherent powers, Barnes, 158 F.3d at 1214, the undersigned concludes that sanctions against Plaintiff's counsel should be the same under that authority.[11]

---

[10]  Needless to say, that information is easily accessible from the PACER Case Locator, which is "a national index for U.S. district, bankruptcy, and appellate courts."  See https://www.pacer.gov/.  An associate at the Zidell Firm who appeared at the May 24th hearing on behalf of Plaintiff and Plaintiff's counsel twice made the argument that the Zidell Firm could not spend time on background checking every client and questioning everything they say because there was little likelihood that fees for engaging in client investigation would be awarded under the FLSA's attorney's fees provision.  The undersigned cautioned the Zidell Firm associate against pursuing such an unethical argument any further.

[11]  Two other indicia that support a finding of objectively unreasonable and vexatious conduct on the part of Attorney Zidell that could have been avoided by *de minimis* inquiry at the pre-filing stage are: (1) the Statement of Claim seeking overtime wages from November 13, 2012 through August 12, 2015 even though Silva's employment ended on November 13, 2013 as shown on Attorney Palma's demand letter, which presumably was included in the papers from Attorney Palma that Silva turned over to Attorney Zidell at the intake interview; and (2) the closeness in time between Silva's participation in the Mortgage Modification Mediation in bankruptcy court and commencement of this action, both of which occurred in August 2015.

The undersigned next addresses Defendants' request for sanctions against Plaintiff pursuant to the court's inherent authority. As previously noted, the Court has found in the Summary Judgment Order that Plaintiff admitted that he should have disclosed his overtime wages claim in the bankruptcy proceedings; and that Plaintiff did not offer evidence refuting Defendants' claim that he had a motive to conceal the claim. These record findings preempt Plaintiff's averments at the sanctions stage that he lacked knowledge of the bankruptcy disclosure requirements; and that he did not understand the bankruptcy proceedings in support of his contention that the non-disclosure was unintentional. Therefore, the undersigned concludes that Plaintiff's conduct also satisfies the bad faith standard necessary to unlock the Court's inherent power. Barnes, 158 F.3d at 1214.

Based on the foregoing analysis, the undersigned respectfully recommends that Defendants' Section 1927 Motion for Sanctions be granted as to both Plaintiff and Plaintiff's counsel and that sanctions in the entire amount of reasonable fees and costs incurred by Defendants in this case be imposed on them jointly and severally.[12]

### B.      *Rule 11 Motion for Sanctions*

The foregoing analysis is equally applicable to Defendants' Rule 11 Motion for Sanctions. Attorney Zidell's failure to conduct even a *de minimis* inquiry into Silva's involvement in other litigation, including bankruptcy proceedings, prior to filing the Complaint in this action is not objectively reasonable. Baker, 158 F.3d at 524 ("The objective standard for

---

[12] Given this determination, the undersigned need not consider Defendants' subsidiary arguments that sanctions should be imposed on Plaintiff's counsel for opposing the Motion for Summary Judgment and the Motion to Abate. Nevertheless, the undersigned rejects as hollow, self-serving and illogical the reasons proffered by Attorney Zidell for such conduct; namely, that judicial estoppel is discretionary and that he was under an obligation to pursue Silva's case to ensure that the scheduling order was met. As to the first contention, Eleventh Circuit case law is clear that Silva's failure to disclose the overtime wages claim in the bankruptcy proceedings precluded him from bringing this action. As to the second one, the abatement requested by Defendants would have stayed the scheduling order.

testing conduct under Rule 11 is reasonableness under the circumstances and what was reasonable to believe at the time the pleading was submitted."); see also Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir. 1987) (The language of Rule 11 "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.") (citing advisory committee's note to 1983 amendment).  Therefore, Attorney Zidell's conduct is also sanctionable pursuant to Rule 11(c).  Additionally, given the record findings that preempt Silva from disavowing any knowledge of the bankruptcy disclosure requirements or understanding of the bankruptcy proceedings, Silva is also subject to Rule 11 sanctions. Brown, 647 F. Supp. 2d at 205 ("Under Rule 11 sanctions may be imposed upon a represented party when the party had actual knowledge that the filing of the papers constituted wrongful conduct, e.g. the papers made false statements or w[ere] filed for an improper purpose.").  Therefore, the undersigned recommends that the entire amount of reasonable fees incurred by Defendants in this case be imposed as sanctions on Plaintiff and Plaintiff's counsel, jointly and severally, pursuant to Rule 11.[13]

## CONCLUSION

Based on the foregoing considerations it is **RESPECTFULLY RECOMMENDED** that:

1.      Defendants' Section 1927 Motion for Sanctions be GRANTED and sanctions be AWARDED to Defendants against Plaintiff and Plaintiff's counsel, jointly and severally, in the entire amount of reasonable attorney's fees and costs incurred by them in this action.

---

[13]   As previously noted, Defendants' request for Rule 11 sanctions in the form of dismissal of the Complaint with prejudice has been mooted by the Court's Summary Judgment Order.  Further, in the Rule 11 Motion for Sanctions, Defendants asked for an award of fees, rather than fees and costs as they did in the Section 1927 Motion for Sanctions.

2.       Defendants' Rule 11 Motion for Sanctions be GRANTED and sanctions be AWARDED to Defendants against Plaintiff and Plaintiff's counsel, jointly and severally, in the entire amount of reasonable attorney's fees incurred by them in this action.

3.       Defendants be DIRECTED to submit their statement of reasonable fees and costs within thirty days of entry of the Court's Order.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>fourteen</u> days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Robert N. Scola, Jr., United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  <u>See Resolution Tr. Corp.</u> <u>v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida on this 29th day of August, 2016.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     United States District Judge Robert N. Scola, Jr.
        Counsel of Record