UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:15-23028-RNS

JULIO ANTONIO SILVA, and all others )
similarly situated under 29 U.S.C. 216(b), )
                                                         )
              Plaintiff, )
  vs. )
                                                         )
PRO TRANSPORT, INC.; OSCAR )
ACHARANDIO; TONY MENENDEZ, )
                                                         )
              Defendants. )
_____ )

**PLAINTIFF'S OBJECTION AND RESPONSE
TO REPORT AND RECOMMENDATION**

COMES NOW Plaintiff and the undersigned counsel, regarding [DE 61] as follows:

**INTRODUCTION**

1. Plaintiff objects to the Magistrate's ruling [DE 61] (sometimes referred to herein as the "R&R"), and requests that the District Judge reject and overrule the R&R and find that sanctions should not be awarded against Plaintiff or Plaintiff's Counsel.

2. As set forth below the Court should not adopt the Magistrate's R&R, and should not impose sanctions on Plaintiff or counsel.

3. The summary judgment order [DE 38] states that Silva's excuse to avoid judicial estoppels was insufficient; this does not equate to bad faith on Plaintiff's and Counsel's part.

## **MEMORANDUM OF LAW AND ARGUMENT**

I. **There is no Duty to Investigate a Client's Representations and Plaintiff could not Waive his Overtime Rights**.

The Supreme Court has ruled that a worker's rights to overtime wages cannot be waived or abridged by contract; they are "inalienable" in the employment law context. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (U.S. 1981).  Consequently, the Court should implement a heightened scrutiny[1] in evaluating the imposition of additional sanctions, particularly when Plaintiff's claim has now already been dismissed with prejudice.   An attorney multiplies the proceedings unreasonably and vexatiously when the conduct is egregious to the level of  bad faith.  *See*, *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir.2007), and also *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).  On page 6 of the R&R, the Court cites Amlong's language that requires the conduct to be done "knowingly and recklessly".  500 F.3d 1242.

It is worth noting that on Page 11 of the R&R, the Magistrate found the Plaintiff "to be a person of low intellectual capacity" (at FN 3 Plaintiff's testimony is alleged to be vague, evasive, confused and inconsistent), and Plaintiff's counsel had a good faith basis to rely on Plaintiff's representations that Plaintiff had no other pending cases.[2]  Controlling law did not require Plaintiff's counsel to affirmatively investigate Plaintiff's representation to Counsel, at the case's inception, that Plaintiff had no other pending

---

[1] Since a plaintiff's FLSA rights cannot normally be waived, this should have been considered by the Magistrate Judge when determining bad faith on the part of the undersigned during the litigation.

[2] The R&R acknowledges that the undersigned's sign-up sheet specifically asked whether Plaintiff had any other pending cases to which Plaintiff affirmatively responded that he did not.  *See* Affidavit of J.H. Zidell, Esq., Para. 3 [DE 59-1].

cases. It is easy to claim that, in hindsight perhaps, Plaintiff's counsel could have taken additional action, however such is not a justification to impose sanctions.

In this case, the R&R at Page 15 indicates Plaintiff admitted he should have disclosed the overtime claim in the bankruptcy court. Such is an example of hindsight on the part of the Plaintiff. As noted in the R&R at Page 9, Para. 7, Plaintiff Silva claimed that, to his understanding, the purpose of the bankruptcy court proceedings was to lower his mortgage payments.

In the case at bar, as set forth in Plaintiff's summary judgment response [DE 28], Plaintiff-employee was in the process of rectifying this mistake. Quickly after learning of it, Plaintiff's counsel communicated this issue to bankruptcy counsel for Plaintiff-employee, Mary Reyes, who agreed to move to amend the bankruptcy schedules. The undersigned Firm relied on bankruptcy counsel regarding issues relevant to Plaintiff's bankruptcy proceedings. Also, as to reasonableness and "prefiling inquiry" addressed by the R&R at Page 16 in relation to Rule 11, it is not disputed that the Plaintiff did not disclose his bankruptcy case to counsel on the sign-up sheet[3] when the undersigned Firm entered in to the attorney-client Agreement. *See* Affidavit of J.H. Zidell, Esq., Para. 3 [DE 59-1]. Consequently, the R&R is incorrect when it claims (on Page 10) that Plaintiff was not asked to identify other litigation.[4]

Concerning the Magistrate's ruling, it is difficult to discern where she would expect the duty to end. For example, would counsel be expected to run bankruptcy searches in all (50) states? What if counsel failed to locate an out of state bankruptcy that was not

---

[3] The undersigned's sign-up sheet specifically asked if Plaintiff had any other pending cases.

[4] The Magistrate Judge recommends that the undersigned pay all of the Defendants' fees and costs from the case's inception based on this error.

disclosed? Should that be sanctionable? Notwithstanding the "closeness in time" referenced by the Magistrate, Plaintiff objects to this for all of the reasons set forth *supra* and *infra* in that Plaintiff's counsel did not engage in bad faith or vexatious conduct, and Counsel did not have a legal duty to investigate to ensure Plaintiff was being truthful on the intake form when he did not reveal the bankruptcy action. As indicated by Mr. Zidell's Affidavit, "As soon as This Firm found out about Mr. Silva's bankruptcy, Associate Counsel Elizabeth Hueber, Esq., contacted Mr. Silva, and Mr. Silva's bankruptcy counsel of record." Mr. Zidell further states "Bankruptcy Counsel of record agreed to amend Mr. Silva's bankruptcy schedules immediately to reflect this civil case, and This Firm relied on her knowledge of bankruptcy law that such could be done." The undersigned Firm followed up with bankruptcy counsel to verify that bankruptcy counsel did so. Consequently, Plaintiff's counsel immediately attempted to rectify this matter upon discovering the lack of disclosure.

In addition to the fact that controlling law did not require Plaintiff's counsel to affirmatively investigate Plaintiff's representation to Counsel that Plaintiff had no other pending cases, Plaintiff immediately made efforts to rectify the schedules with bankruptcy counsel, after learning of the same.

In *Del Carpio-Cotrina* this Court noted that "However, we do not believe that the ethical rules, as written, require a lawyer to take affirmative steps to discover client fraud or future crimes. Also, "Independently, the Court is of the view that imposing a duty to investigate the client would be incompatible with the fiduciary nature of the attorney-client relationship. *United States v. Del Carpio-Cotrina*, 733 F. Supp. 95, 99 (S.D. Fla. 1990). Defendants argue that Solowsky had a duty to his client, Reizen, to comply with

4

Reizen's instructions. It is true that a lawyer does not have an obligation to "take affirmative steps to discover client fraud or future crimes." *U.S. v. Del Carpio-Cotrina,* 733 F.Supp. 95, 99 n. 9 (S.D.Fla.1990). *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 278 (11th Cir. 2009). The Third DCA has noted that "There is no duty to cross examine him about his previous sworn testimony; an attorney has a right to rely on the client's testimony." *Endicott v. Int'l Hospitality, Inc.,* 920 So.2d 915, 922 (Fla 3rd DCA 2005).

In the case of *Wolfe v. Foreman*, 128 So. 3d 67, 72 (Fla. Dist. Ct. App. 2013), the court stated that "The plaintiff alleges the Kenny Nachwalter law firm had a duty to independently verify what it was told by its client and lead counsel. That is not so. *Endacott v. Int'l Hospitality, Inc.,* 910 So.2d 915, 922 (Fla. 3d DCA 2005) (stating lawyers are entitled to rely on their client's representations of fact); *United States v. Del Carpio–Cotrina,* 733 F.Supp. 95, 99 (S.D.Fla.1990) (stating ethical rules do not require lawyers to investigate client); *see also Baron v. Fieldstone,*581 So.2d 649, 650 (1991) (concluding attorney fees were improperly assessed against the plaintiff's counsel where counsel acted in good faith based on his client's representations)."

Analagously, the Ninth Circuit stated that "The Narduccis have introduced no evidence to show that Thiessen had any knowledge of these representations or any reason to have had such knowledge. They cite no case to support a duty on the part of an attorney to investigate the actions and representations of its client flowing from the attorney's role in drafting a contractual form. The cases cited by the Narduccis, *Roberts v. Peat, Marwick, Mitchell & Co.,* 857 F.2d 646 (9th Cir.1988), and *Rudolph v. Arthur Anderson & Co.,* 800 F.2d 1040 (11th Cir.1986), are distinguishable as both involve

5

defendants alleged to have had actual knowledge of the alleged fraud. *Narducci v. Neighbor*, 907 F.2d 155 (9th Cir. 1990).

The undersigned does not necessarily take issue if the Court is attempting to create a new duty upon attorneys in this district to investigate representations made by their clients; however, the Court should find that any <u>newly</u> created duty upon counsel does not justify the imposition of sanctions against Plaintiff's Counsel when prevailing law currently does not require Plaintiff's counsel to affirmatively investigate a client's representation made to Counsel.  The undersigned Firm relied on Plaintiff's representations that he had no other pending cases, and no evidence shows such reliance was done in bad faith.

Moreover, the law affords a high standard with respect to entering sanctions.  In this matter, the Magistrate entered sanctions pursuant to 28 U.S.C. §1927 (and the Court's inherent powers) and also rule 11 of the Federal Rules of Civil Procedure. The clear distinction between Section 1927 and Rule 11 is that rule 11 is designed to afford 21 day safe harbor period to make the appropriate corrections, while §1927 does not provide said safe harbor period. However, the Courts have found other distinct differences between the two rules.

> While many of the same general principles apply to sanctions under Rule 11 and sanctions under §1927, Rule 11 and §1927 are distinct sources of authority. They are aimed at addressing different kinds of misconduct, are different in scope, and are governed by quite different legal standards. See, e.g., *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (noting that Rule 11 "is aimed primarily at pleadings" and addresses the conduct of both parties and attorneys, while §1927 addresses "dilatory tactics throughout the entire litigation" and is focused solely on attorney conduct); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (noting that

6

> Rule 11 permits attorney's fees "for conduct which merely fails to meet a reasonableness standard," **in contrast to a court's <u>inherent powers</u>, which require a higher showing**). Rule 11 cases do not dispose of the issues arising under § 1927 (emphasis added).

*Amlong & Amlong, P.A. v. Denny's, Inc*., 500 F.3d 1230, 1241 (11th Cir. Fla. 2006).

As noted by the Eleventh Circuit in *Amlong*, the requirement of imposing sanctions pursuant to 28 U.S.C. §1927 requires a higher standard. "Nevertheless, the district court appropriately recognized this circuit's longstanding rule that the provisions of § 1927, being penal in nature, must be strictly construed. *See Monk v. Roadway Express, Inc.,* 599 F.2d 1378, 1382 (5th Cir.1979), *aff'd sub nom. Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997).

"As the plain statutory language makes clear, § 1927 is not a "catch-all" provision for sanctioning objectionable conduct by counsel. Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927. First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.,* the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997).

See *SEC v. Creative Capital Consortium, LLC*, 2009 U.S. Dist. LEXIS 116312 (S.D. Fla. Nov. 24, 2009) citing *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001) (quoting *Chambers v. NASCO*, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27

7

(1991)). However, as cited in *SEC*, "[b]ecause the court's inherent power is so potent, it should be exercised 'with restraint and discretion.'" *Byrne*, 261 F.3d at 1106 (*citing Chambers,* 501 U.S. at 50)." Id at. *13.

> However, because of their potent nature, "inherent powers must be exercised with restraint and discretion." Id., 501 U.S. at 42-43, 111 S. Ct. at 2131-32, 115 L. Ed. 2d at 45 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 2463, 65 L. Ed. 2d 488, 499-500 (1980)). A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. For example, circumstances which may dictate the exercise of inherent power to assess attorney's fees against counsel, include those where a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." Id. (citations omitted).*Glatter v. Mroz* (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. Fla. 1995).
>
> Invocation of a court's inherent power requires a finding of bad faith. *Chambers*, 501 U.S. at 49, 111 S. Ct. at 2135, 115 L. Ed. 2d at 48. The court must afford the sanctioned party due process, both in determining that the requisite bad faith exists and in assessing fees. *Id*. Due process requires that the attorney (or party) be given fair notice that his conduct may warrant sanctions and the reasons why. *Donaldson v. Clark*, 819 F.2d 1551, 1559-60 (11th Cir.1987) (discussing Rule 11 sanctions). Notice can come from the party seeking sanctions, from the court, or from both. *Id*. at 1560. In addition, the accused must be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify his actions.

*Glatter v. Mroz* (In re Mroz), 65 F.3d 1567, 1576 (11th Cir. Fla. 1995). See also *DeVaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1159 (11th Cir. Ala. 1993) (sanctions under rule 37 should not be imposed lightly or without fair notice and an opportunity for a hearing on the record).

> The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) re *Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)).

8

> "Because the court's inherent power is so potent, it should be exercised 'with restraint and discretion.'" *Byrne*, 261 F.3d at 1106 (citing *Chambers*, 501 U.S. at 50).

*SEC v. Creative Capital Consortium, LLC*, 2009 U.S. Dist. LEXIS 116312, *14 (S.D. Fla. Nov. 24, 2009). Therefore, the Court in the case at hand should only award sanctions if Plaintiffs and/or counsel were done in bad faith. In determining whether a party's conduct amounts to bad faith, the courts have stated:

> Bad faith can be found where the court finds that a ". . . fraud has been practiced upon it, or that the very temple of justice has been defiled," where a party delays or disrupts the litigation, or hampers the enforcement of a court order, or where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. *See Chambers,* 501 U.S. at 46; *Barnes,* 158 F.3d at 1214 (*citation omitted*). In determining whether sanctions should be awarded under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Rothenberg v. Sec. Mgmt Co., Inc.,* 736 F.2d 1470, 1472 (11th Cir. 1984).

*SEC v. Creative Capital Consortium, LLC*, 2009 U.S. Dist. LEXIS 116312, *14 (S.D. Fla. Nov. 24, 2009). In the case at hand, Plaintiff and counsel have not acted in bad faith and the claims brought by Plaintiff were not brought for the purpose of harassing Defendants, and have not engaged in vexatious conduct. *See also, McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002).

Under Rule 11, sanctions should be denied so long as there is some tenable legal position being argued that is not totally baseless.[5] *See, Brunt v. Service Employees International Union*, 284 F.3d 715 (7th Cir. 2002); *Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc.*, 202 F.3d 965 (7th Cir. 2000).

---

[5] When a failure to disclose a claim in bankruptcy occurs, the remedy of dismissal in the district court is discretionary—not mandatory as explained below.

9

As stated, prevailing law did not require Plaintiff's counsel to affirmatively investigate Plaintiff's representation to Counsel that Plaintiff had no other pending cases. Plaintiff's counsel did not vexatiously multiply the proceedings, and otherwise has not acted in bad faith, and the claims brought by Plaintiff were not brought for the purpose of harassing Defendants.  Under *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998), the question is whether objectively it was reasonable to file the pleading at the time of submission.

The legal authority on whether to tax attorney fees against a non-prevailing Plaintiff and his/her Counsel in an FLSA context is *Kreager v. Solomon & Flanagan, P.A*., 775 F.2d 1541 (11th Cir. 1985.).  *Kreager*, citing *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975), stated " federal courts that award attorney fees, unless statutorily prescribed, follow the "American Rule" as stated in *Alyeska Pipeline*: namely, absent a specific provision of Congress, a litigant may not recover attorney fees. The Eleventh Circuit Court of Appeals, in *Kreager*, further commented that the F.L.S.A. only explicitly authorizes attorney fees to prevailing plaintiffs: not prevailing defendants. (29 U.S.C. 216(B).

However, according to *Kreager* and *Alyeska Pipeline*, attorney fees may be awarded to a prevailing party if the non-prevailing party conducted the litigation in a bad-faith, vexatious, or oppressive manner. *See Alyeska Pipeline* at 258. This standard has also been applied for ADEA cases as well as the FLSA. *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428  (11th Cir. 1998).

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), the Supreme Court stated in a Title VII context that it is important for "a district court [to] resist the

10

understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  There is a definite distinction to be drawn between losing a summary judgment motion and being accused of vexatious litigation—the latter which did not occur in this case. *See also* bad faith analysis in *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1382-83 (5th Cir. 1979); *Loftus v. Southeastern Pennsylvania Transportation Authority*, 8 Fed.Supp. 2d 458; 1998 U.S. Dist. LEXIS 6650 (E.Dist. Pa. 1998).  Further, A number of courts have cautioned, however, that the power to impose sanctions "should be exercised with restraint, lest the prospect chill the ardor of proper and forceful advocacy on behalf of [the] client."). *See, Lino L. Alphonso v. Pitney Bowes, Inc. and Norm Somme*r, 356 F. Supp. 2d. 442  (Dist. N.J. 2005).

"Bad faith" is the touchstone. Section 1927 is not about mere negligence. *See Shepherd v. Wellman,* 313 F.3d 963, 969 (6th Cir.2002); *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.,* 103 F.3d 294, 297–98 (3d Cir.1996); *Baulch v. Johns,* 70 F.3d 813, 817 (5th Cir.1995).

As indicated by the Magistrate's Report at Para. 26, "[u]pon the Zidell Firm's learning about Silva's bankruptcy proceedings, one of the Zidell Firm's associates contacted Attorney Reyes, who agreed to amend Silva's bankruptcy schedules to reflect this case."  The R&R acknowledges that the undersigned Firm followed up to ensure that bankruptcy counsel had done so.  *See* R&R at Paras. 26 and 27.

The Magistrate, in the R&R, appears to have identified the following as sanctionable conduct on the part of Plaintiff's Counsel ("Zidell") to which the undersigned and Plaintiff object:

11

(1) At page 14, it was unreasonable and vexatious for Zidell to file the action, and the intake form requesting identification of other suits is a "poor excuse", and Zidell's conduct occurred at the inception of the case. Plaintiff objects to this for all of the reasons set forth *supra* and *infra* in that Plaintiff's counsel did not engage in bad faith or vexatious conduct, and Counsel did not have a legal duty to investigate to ensure Plaintiff was being truthful on the intake form when he did not reveal the bankruptcy action, and after being specifically asked to disclose all pending cases.

(2) At FN 11, the statement of claim sought overtime wages from 11/13/12-8/12/15, even though Plaintiff's employment ended on 11/13/13. However, the undersigned objects to this finding, as the undersigned Firm filed an Amended Statement of Claim [DE 11] on 9/17/15 which corrected such date to reflect an ending date of 11/13/13.[6] Moreover, it does not appear that either of Defendants' motions for sanctions [DE Nos. 40 and 41] or their Rule 11 letter ever raised such issue at all. Thus, it appears that the Magistrate raises this issue *sua sponte* (as indicated in FN 11 of the R&R the Plaintiff's previous counsel's demand letter is referenced)—without giving the undersigned notice to respond to same.

(3) At FN 11, Plaintiff's participation in the Mortgage Modification Mediation in bankruptcy court and the filing of the instant action both occurred in August 2015. Notwithstanding the "closeness in time" referenced by the Magistrate, Plaintiff's Counsel objects to this for all of the reasons set forth *supra* and *infra* in that Plaintiff's counsel did not engage in bad faith or vexatious conduct, and Counsel did not have a legal duty to

---

[6] The undersigned Firm and Counsel quickly corrected the statement of claim upon learning of the error.

12

investigate to ensure Plaintiff was being truthful on the intake form when he did not reveal the bankruptcy action.

(4) At Page 16, the Magistrate cites to Rule 11 about the need for some pre-filing inquiry. However, the undersigned objects stating that Counsel did not have a legal duty to investigate to ensure Plaintiff was being truthful on the intake form when he did not reveal the bankruptcy action.

As to Plaintiff's opposition to the Defendants' Motion to stay this action, the Magistrate at FN12 rejected Plaintiff's arguments (as hollow, self-serving and illogical) regarding the scheduling order and the discretionary nature of judicial estoppel analysis.[7] *See* attached Order from *Collar v. Abalux, Inc.*, 16-20872-Civ-Lenard, (S.D. Fla. 7/18/16)(motions for stays are "highly disfavored");[8] therefore it was reasonable for the undersigned to believe it was unlikely a stay would be granted. Therefore, the opposition to the motion to stay was not vexatious and not done in a bad faith. Had the Court denied the Motion to stay, discovery would have been forfeited to Plaintiff's detriment. At FN12, the Magistrate claims that this action was not even able to be brought under Eleventh Circuit case law[9] (however FN12 cites no cases regarding same). Plaintiff's counsel would state that many Judges in this District are draconian regarding enforcement of deadlines in scheduling orders—especially for FLSA cases. *See* attached Orders in *Garcia v. Luis Innovation*, 15-24664-Civ-Cooke, at 4 (S.D. Fla.

---

[7] The undersigned objects to this finding, and it was not raised specifically in either of Defendants' sanctions motions, thereby depriving the undersigned an opportunity to respond in writing before the evidentiary hearing occurred.

[8] Also *see Williford v. Armstrong World Ind.*,715 F.2d 124 (4th Cir. 1983), *quoting Landis v. North Am. Company*, 299 US 248 (1936).

[9] In fact, as the Court acknowledges in the summary judgment order, dismissal is a discretionary remedy for this issue—not mandatory.

1/6/16)(extensions require "extreme of compelling circumstance); *Collar v. Abalux, Inc.*, 16-20872-Civ-Lenard, (S.D. Fla. 7/18/16)(extensions "highly disfavored"). Also, in the case at bar at [DE 6] page 2, this Court contemplates an "expedited case track".

II. **Failure to Disclose the Civil Case to the Bankruptcy Court did not Automatically Preclude Counsel from Filing the Civil Case under the Facts of this Case.**

As, stated above, the undersigned had no duty to investigate Plaintiff's original assertions. In this matter, there is no dispute in the record that Plaintiff did not disclose his bankruptcy case to undersigned Counsel, and the Plaintiff did not disclose same to counsel on the sign-up sheet[10] when the undersigned Firm entered in to the attorney-client Agreement. Consequently, the R&R is incorrect when it claims (on Page 10) that Plaintiff was not asked by the undersigned to identify other litigation.

In the R&R (Page 5), the Magistrate stated that bad faith is warranted where (1) an attorney knowingly or recklessly raises a frivolous argument, or (2) argues a meritorious claim for the purpose of harassing an opponent. The Magistrate also stated that a party exhibits bad faith by delaying or disrupting the litigation or hampering enforcement of court order. *Barnes*, 158 F.3d at 1214 (*citing Primus Auto. Fin. Servs.. lnc. v. Batarse*, 1 15 F.3d 644, 649 (9th Cir. 1997. No such conduct occurred in the instant case on the part of Plaintiff's counsel. The R&R at 6 cites *Macort* regarding the three prongs that are required to impose Section 1927 sanctions. *Macort* holds that "[T]he statute sets out a three-prong, conjunctive test: (1) unreasonable and vexatious conduct; (2) such that the proceedings are multiplied; and (3) a dollar amount of sanctions that bears a financial nexus to the excess proceedings." *Macort v. Prem. Inc.*,

---

[10] There was a specific question on the sign-up sheet asking for other existing claims.

14

208 F.App'x 781, 785-86 (11th Cir. 2006) (citing Peterson v. BMJ Refractories. 124 F.3d 1386, 1396 (11th Cir. l 997)). "All three requirements must be met before sanctions are imposed." Id. at 786. In this case, such factors are not satisfied to justify sanctions. The Magistrate took issue in FN8 of the R&R, regarding Plaintiff's position that Defendants got "lucky" in this matter.[11] However, that appears to be an expression of personal feeling by the Magistrate. Not only did Defendants get this matter dismissed, the value of this claim has been nullified and will not be available to any creditors in the bankruptcy. The Defendants, therefore, benefitted significantly in the bankruptcy court (and also in this court) by not having to pay Plaintiff overtime that was allegedly owed to Plaintiff.

In *McMahan*, the Court noted that "The plain language of section 1927 sets forth three requirements to justify an imposition of sanctions: (1) an attorney must engage in "unreasonable and vexatious" conduct; (2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings;" and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. *Peterson,* 124 F.3d at 1396. The critical question in this case involves the first *Peterson* factor—whether the filing of this lawsuit was "unreasonable and vexatious" conduct." *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001), *amended on reh'g,* 311 F.3d 1077 (11th Cir. 2002). No such conduct occurred in the instant case on the part of Plaintiff's counsel.

"Therefore, **even if an attorney files a complaint that he knows is frivolous, § 1927 sanctions are not appropriate unless the attorney delays judicial proceedings after the complaint has been filed.** *See Peer,* 606 F.3d at 1314. This limitation of

---

[11] The usage of the words "got lucky" was not to be offensive. Usually a plaintiff cannot waive FLSA rights under *Barrentine, supra*. The Defendants did "get lucky", in effect, by securing a "waiver" by estoppel.

15

review to post-complaint activities comports with the Eleventh Circuit's observation that § 1927 must be strictly construed because it is penal in nature." *Norelus v. Denny's Inc.,* 628 F.3d 1270, 1280–81 (11th Cir.2010) (citing *Peterson,* 124 F.3d at 1395)(emphasis added). In this case, the undersigned Firm did NOT know about the bankruptcy, and did NOT knowingly file a frivolous case. Under *Norelus* therefore, the Magistrate's R&R is in error by claiming otherwise.

As to Plaintiff's opposition to the stay in this action, the Magistrate at FN12 rejected Plaintiff's arguments (as hollow, self-serving and illogical) regarding the scheduling order and the discretionary nature of judicial estoppel's analysis. At FN12, the Magistrate claims that this action was not even able to be brought under Eleventh Circuit case law (however FN12 cites no cases regarding same). This is a mistaken assumption in the R&R.

"Courts have observed that '[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle.' *Allen*, 667 F.2d, at 1166; (further citations omitted)." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). See, *Allen v. Zurich Ins. Co.*, 667 F.2d 1162 (4th Cir. 1982).

If there is no general formula or principle for a court to follow, it is unjust and unfair for the R&R to find that J.H. Zidell, P.A., without question, should not have proceeded with the case because of the potential for Judicial Estoppel. The question regarding Judicial Estoppel was not certain[12], and Counsel could not be certain how the

---

[12] Silva asserted that he thought the bankruptcy was a home mortgage re-modification which could be viewed as a mistake, thereby negating Silva's knowledge of the lawsuit and motive to conceal.

16

Court would rule on summary judgment.[13] Also, at the inception of the case, Plaintiff's Counsel did not know about the bankruptcy matter (and also included a query regarding other litigation on Plaintiff's sign-up sheet). There is no basis to find that Plaintiff's Counsel exhibited bad faith from the case's inception or anytime thereafter.

More importantly, the Supreme Court notes that essential to the decision as to whether apply judicial estoppel is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. J.H. Zidell, P.A., informed Plaintiffs Bankruptcy Counsel to avoid the unjust enrichment of the Plaintiff, and the Defendants suffered no unfair detriment, but rather a significant windfall. Had the case been disclosed, it would have simply become part of the Bankruptcy Estate, and would have been put in the hands of the Bankruptcy Trustee.

Also, Defendants filed their Motion for Summary Judgment on the sole grounds of the affirmative defense of judicial estoppel, yet they never pled or argued same in their affirmative defenses or response to statement of claim. Defendants fault the Plaintiff for not disclosing the unliquidated claim against Defendant-employers during Plaintiff-employee's Chapter 13 bankruptcy In re Julio Silva, 14-33923-LMI (Bankr. So.Dist.Fla. October 29, 2014). However, Defendant never even raised this issue as an affirmative defense. Defendants Rule 11 is dated November 27, 2015. Affirmative defenses are

---

[13] As explained in the response to the motion for summary judgment [DE 28], the undersigned viewed Plaintiff's failure to disclose in the bankruptcy court as not intentional, and that Plaintiff deserved the benefit of the doubt since, normally, FLSA claims cannot be waived under *Barrentine, supra*. This was neither vexatious, nor done in bad faith. The ultimate dismissal based on estoppel does not equate to a frivolous argument made in response to a motion for summary judgment. The R&R is in error by suggesting otherwise.

normally waived if not pled. *Diaz v. Jaguar Rest. Group, LLC*, 2010 U.S. App. LEXIS 25361 (11th Cir. Fla. Dec. 13, 2010).[14]

### III. **Because the Court Dismissed the Action, the Ultimate Sanction has Already been Imposed.**

The Eleventh Circuit has "articulated a two-part analysis for determining when an action should be dismissed as a sanction: There must be both [1] a clear record of willful conduct, and [2] a finding that lesser sanctions are inadequate. *See, Betty K. Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005) ("dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct")); s*ee also Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 212 (5th Cir. 1976) ("[D]ismissal with prejudice is such a severe sanction that it is to be used only in extreme circumstances, where there is a clear record of delay or contumacious conduct, and where lesser sanctions would not serve the best interests of justice.") (quotations omitted). *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999) ("Dismissal under Rule 41(b) is appropriate where there is . . . an implicit or explicit finding that lesser sanctions would not suffice.")

In this case, through dismissal, the Court has already imposed the ultimate sanctions on the Plaintiff.[15] Therefore, it is respectfully requested the Court not impose any further sanctions in this matter.

---

[14] This should also be considered as a mitigating factor in opposition to sanctions being imposed. It was not frivolous to argue in response to summary judgment that Defendants waived the affirmative defense of estoppel by not raising it as an affirmative defense.
[15] And counsel as well, since all attorney time and costs spent litigating the case were forfeited due to the dismissal.

18

Also Plaintiff objects to Page 17 of the R&R where the Magistrate directs Defendants to submit a statement of reasonable fees within (30) days.  As indicated by the Scheduling Report, [DE 18], Para. 11, the Parties stated that they "do not see a need to reference any matter to the magistrate".  Thus, in this matter the Parties never consented to the Magistrate regarding fees, costs or sanctions; the R&R has not yet been ruled upon by the District Judge.  Moreover, the (30) day deadline imposed by the Magistrate violates Rule 7.3 of the Local Rules of the Southern District of Florida.  For example, Rule 7.3 has very specific deadlines regarding fee Motions such as serving the fee motion within (30) days, a (21) day conferral period, and filing within (60) days.  Should the district judge ultimately approve any sanctions, Plaintiff must have an opportunity to review and respond to the billing records, motion for fees, bill of costs etc. as required by Rule 7.3.

WHEREFORE, PLAINTIFF OBJECTS TO THE MAGISTRATE'S RULING [DE 61], AND REQUESTS THE DISTRICT JUDGE TO REJECT THE RULING AND FIND THAT SANCTIONS SHOULD NOT BE AWARDED AGAINST PLAINTIFF AND/OR PLAINTIFF'S COUNSEL, AND FOR THE COURT TO SUSTAIN ALL OF THE OBJECTIONS STATED HEREIN.

**Respectfully submitted,**

**J.H. ZIDELL, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: ZABOGADO@AOL.COM**
**F.B.N. 10121**
**BY:____/s/ J.H. ZIDELL_____**
**J.H. ZIDELL, ESQ.**

**CERTIFICATE OF SERVICE:**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT 9/9/16 VIA CM/ECF TO:**

**ALL CM/ECF RECIPIENTS**

**ZUMPANO CASTRO, LLC**
**COUNSEL FOR DEFENDANTS**
**500 SOUTH DIXIE HIGHWAY, SUITE 302**
**CORAL GABLES, FLORIDA 33146**
**(305) 503-2990**

**BY:_____/s/ J.H. ZIDELL_____**
**J.H. ZIDELL, ESQ.**